# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF GEORGIA
### AUGUSTA DIVISION

VICKIE WOODWARD,

    Plaintiff,

v.

JIM HUDSON LUXURY CARS, INC.,

    Defendant.

CV 118-032

---

## O R D E R

---

Before the Court is Defendant's motion for summary judgment. (Doc. 22.) In this action, the Clerk of Court gave Plaintiff notice of the motion for summary judgment and informed her of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 23.) Thus, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

## I. BACKGROUND

Plaintiff, Vickie Woodward, began working for Defendant, Jim Hudson Luxury Cars, Inc., on March 10, 2014. (Def.'s St. of Mat.

Facts, Doc. 22-5, ¶ 1.)[1]  At the outset, Defendant employed Plaintiff as a service advisor in the new car service department at its Lexus store. (Id.)  The following year, Defendant promoted Plaintiff to Assistant Service Manager. (Id. ¶ 2.)

## A. Plaintiff's Transfer from New to Used Car Center

In August 2015, Plaintiff received a breast cancer diagnosis and informed Defendant in September 2015 that she required leave to undergo a double mastectomy. (Pl.'s St. of Mat. Facts, Doc. 27-1, ¶¶ 6, 7.)  Upon learning of Plaintiff's forthcoming surgery, Marcus Wideman, Defendant's Service Manager, commented to Plaintiff that he wanted to "hug the girls" before Plaintiff's operation. (Pl.'s St. of Mat. Facts, ¶ 8.)  Following Plaintiff's disclosure of her diagnosis to Defendant's General Manager, Bill Gibbs, Mr. Gibbs made the decision to relocate Plaintiff from the new car service center to the used car service center. (Def.'s St. of Mat. Facts, ¶ 9; Pl.'s St. of Mat. Facts, ¶¶ 2, 11.)  Mr. Gibbs instructed Mr. Wideman to inform Plaintiff of the transfer. (Pl.'s St. of Mat. Facts, ¶ 11.)  Although the Parties seemingly disagree to some degree on the date of the transfer, it occurred sometime between October 1, 2015, and October 5, 2015. (Def.'s St. of Mat. Facts, ¶ 9; Pl.'s St. of Mat. Facts, ¶ 17.)

---

[1] The Court's citation to Defendant's Statement of Undisputed Material Facts or Plaintiff's Statement of Disputed Material Facts indicates the statement is undisputed unless otherwise noted.

The Parties dispute the implications of and reasons for Plaintiff's employment move. According to Plaintiff, the transfer equated to a demotion in terms of reputation, prestige, compensation, and duties and Defendant demoted her because of her cancer diagnosis and requested leave. (Id. ¶ 10; Woodward Dep., Doc. 22-2, at 278:1-14, 279:21-280:19, 295:4-24; Pl.'s Resp. to Def.'s St. of Mat. Facts, Doc. 27-3, ¶ 17 (citing Woodward Dep., Doc. 22-2, at 274:17-276:7).) Defendant, on the other hand, disagrees with Plaintiff's classification of the transfer as a demotion because she operated under the same title and she experienced no reduction in pay. (Def.'s St. of Mat. Facts, ¶ 11; Hooks Aff., Doc. 22-1, ¶ 9.) Furthermore, Defendant provides three reasons for the transfer, none of which involve Plaintiff's cancer diagnosis: (1) the used car service center had no managers and needed Plaintiff's experience; (2) Defendant recently transferred the top service advisor in the new car service department to the used car service department resulting in a negative impact on Plaintiff's commissions; and (3) conflict between Plaintiff and Mr. Wideman caused a drop in morale and customer service scores in the new car service department. (Id. ¶¶ 5-7.) Plaintiff disputes the legitimacy of each of Defendant's reasons for the transfer. (Pl.'s Resp. to Def.'s St. of Mat. Facts, ¶¶ 17-19.)

## B. Plaintiff's Leave

Plaintiff went on leave effective October 27, 2015, and returned December 15, 2015. (Def.'s St. of Mat. Facts, ¶¶ 29–30.) Post surgery, chemotherapy side effects forced Plaintiff to take additional leave beginning January 12, 2016. (Id. ¶ 36.) Plaintiff stated she needed leave extending until July 1, 2016, however, her twelve weeks of Family and Medical Leave Act leave expired February 15, 2016. (Id. ¶¶ 37, 39) At that point, Defendant granted Plaintiff fourteen weeks of additional leave under Defendant's company policy. (Id. ¶ 41) On May 25, 2016, Angela Hooks, Defendant's Controller and Director of Human Resources, mailed Plaintiff to inform her that she had exhausted her discretionary leave and her "eligibility to participate in [Defendant's] group health plan as an active employee . . . [would] end[]" on May 31, 2016. (Id. ¶ 44; May 25, 2016 Letter, Doc. 22-1, at 15.)

Plaintiff did not immediately respond to Ms. Hooks's letter but subsequently informed Defendant that she received medical clearance to return to work on July 18, 2016. (Def.'s St. of Mat. Facts, ¶ 45; Pl.'s Resp. to Def.'s St. of Mat. Facts, ¶ 45; Woodward Dep., at 286:22–287:5; Medical Clearance, Doc. 22-2, at 130.) During Plaintiff's leave, Defendant demolished the used car service center to construct a new dealership building. (Hooks Aff., ¶ 24.) On July 18, 2019, Plaintiff returned to the

dealership. (Def.'s St. of Mat. Facts, ¶ 46; Pl.'s Resp. to Def.'s St. of Mat. Facts, ¶ 46.) Plaintiff met with Warren Spooner, Manager of the former used car service center and current "Lot 3." (Def.'s St. of Mat. Facts, ¶ 47; Hooks Aff., ¶ 25.) Mr. Spooner asked Plaintiff to return the following week to allow him time to work on a position for her. (Pl.'s St. of Mat. Facts, ¶ 31.) Ms. Hooks, however, intervened and asked Plaintiff to return the following day, July 19, 2016. (Pl.'s St. of Mat. Facts, ¶ 33.)

## C. The Social Media Posts

Defendant received an email sometime around July 11, 2016, enclosing a posting Plaintiff allegedly made, associated with her Facebook profile, on an online article. (Def.'s St. of Mat. Facts, ¶ 51; Pl.'s St. of Mat. Facts, ¶ 37; Social Media Emails, Doc. 22-2, at 131-32, 172-74.) The post appears to include Plaintiff's name, Plaintiff's place of employment, and the message: "HANDS UP; THEY WON'T SHOOT!!! Maybe white people understand proper English and simple direction better." (Social Media Emails, at 131-32, 172-74.) The record also contains three relevant social media posts allegedly made by current and former employees of Defendant.

First, Mr. Spooner purportedly posted a meme that states, in part, "all lives matter" and "put your race card away." (Spooner Post, Doc. 22-2, at 159.) Second, Mark Licklider posted an image on his Facebook page containing the caption, "It's not about color.

5

It's about the law."[2] (Licklider Post, Doc. 22-2, at 161.) Third, Charles Cook posted an image depicting a Confederate flag and black men with sagging pants. The caption above the flag reads "this does not offend me" and below the men read "but this bullshit does." (Cook Post, Doc. 22-2, at 171.)

## D. Plaintiff's Termination

Plaintiff returned to the dealership on July 19, 2016, and met with Karyn Heimes, Defendant's Chief Financial Officer, and Ms. Hooks. (Def.'s St. of Material Facts, ¶ 52.) According to Defendant, at this meeting, Ms. Heimes and Ms. Hooks informed Plaintiff that her employment was terminated because her position no longer existed. (Hooks Aff., ¶ 26.) Further, Defendant claims Ms. Heimes and Ms. Hooks notified Plaintiff that her online post made her ineligible for rehire. (Id.) Plaintiff recalls that Ms. Heimes and Ms. Hooks told her that she was terminated in light of her online post but said nothing about her eligibility for rehire. (Woodward Dep., 187:23–188:4, 299:11-20.) At that point, Plaintiff was presented a severance agreement that she refused to sign. (Severance Agreement, Doc. 22-2, at 133-35; July 27, 2016 Email, Doc. 22-2, at 136.)

---

[2] In her deposition, Plaintiff discussed another of Mr. Licklider's Facebook posts involving the same subject matter. (Woodward Dep., at 337:1-338:18.) Based on the conclusions herein regarding Mr. Licklider as a comparator, the Court need not analyze the second post in detail.

## E. Equal Employment Opportunity Commission

Plaintiff sent the United States Equal Employment Opportunity Commission ("EEOC") an unverified letter, dated April 1, 2016, stating she was discriminated against based on her gender and disability. (April 1, 2016 Letter, Doc. 22-2, at 142.) The EEOC responded with a letter on July 13, 2016, informing Plaintiff the April 1, 2016 letter contained insufficient information. (July 13, 2016 Letter, Doc. 22-2, at 144.) The letter enclosed a questionnaire and informed Plaintiff that if she did not respond within thirty days of receiving the July 13, 2016 letter, the EEOC would conclude a lack of intent to file a charge of discrimination. (Id.) Plaintiff completed the questionnaire, signed it, and dated it August 3, 2016. (EEOC Questionnaire, Doc. 22-2, at 146-52.) The questionnaire depicts an intake stamp dated October 17, 2016. (Id. at 145.) The EEOC then sent Plaintiff a Form 5 charge, which Plaintiff signed and dated February 7, 2017. (EEOC Form 5 Charge, Doc. 22-2, at 153.) The EEOC received the completed Form 5 on February 15, 2017, and following investigation, the EEOC notified Plaintiff of its dismissal and Plaintiff's right to sue. (Right to Sue, Doc. 22-2, at 154-58.) Plaintiff filed the present action on February 15, 2018. (Compl., Doc. 1.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must "draw all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials in the record, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Because the standard for summary judgment mirrors that of a directed verdict, the initial burden of proof required by either party depends on who carries the burden of proof at trial. Id. at 322-23. When

the movant does not bear the burden of proof at trial, it may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Celotex Corp., 477 U.S. 317). The movant cannot satisfy its initial burden by merely declaring that the non-moving party cannot meet its burden at trial. Id. at 608.

If — and only if — the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden. For example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993). On the other hand, if the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary

deficiency." Id. at 1116–17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033–34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56. In reaching its conclusions herein, the Court has evaluated the Parties' briefs, other submissions, and the evidentiary record in this case.

### III. DISCUSSION

Defendant initially asserts that Plaintiff's late-filed EEOC charge, dated February 7, 2017, time-bars her Title VII and ADA claims. Plaintiff claims that her initial letter to the EEOC, dated April 1, 2016, constitutes a charge making all claims timely. The Court addresses the Parties' competing arguments.

### A. Timing of EEOC Charge

"It is settled law that, under the ADA, plaintiffs must comply with the same procedural requirements to sue as exist under Title VII." Zillyette v. Capital One Fin. Corp., 179 F.3d 1337, 1339 (11th Cir. 1999). "Prior to filing a Title VII action, . . . a plaintiff must first file a charge of discrimination with the EEOC." Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004) (per curiam). 42 U.S.C. § 2000e–5(e)(1) requires the plaintiff to file the charge within 180 days after the alleged

unlawful employment practice occurred. <u>Ledbetter v. Goodyear Tire</u> <u>& Rubber Co.</u>, 421 F.3d 1169, 1178 (11th Cir. 2005) ("Under . . . 42 U.S.C. § 2000e-5(e)(1), only those 'unlawful employment practices' that are complained of in a timely-filed charge of discrimination to the EEOC can form the basis for Title VII liability."); <u>Wilkerson v. Grinnell Corp.</u>, 270 F.3d 1314, 1317 (11th Cir. 2001) (noting that as a non-deferral state, Georgia has a 180-day deadline); <u>see also</u> 42 U.S.C. § 12117(a) (applying procedures set forth in section 2000e-5 to ADA actions). The practice "'occurred' on the day it 'happened.'" <u>Ledbetter</u>, 321 F.3d at 1179 (quoting <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 109 (2002)).

> "[D]iscrete acts of discrimination" such as "termination, failure to promote, denial of transfer, or refusal to hire" are easy to identify, and each "constitutes a separate actionable 'unlawful employment practice.'" . . . Because each is an identifiable violation of Title VII, "each discrete discriminatory act starts a new clock for filing charges alleging that act."

<u>Id.</u> (quoting <u>Morgan</u>, 536 U.S. at 114). Courts in this circuit have interpreted demotion, reduction in pay, and termination as discrete acts of discrimination. <u>See, e.g.</u>, <u>Fenderson v. Ala. Bd.</u> <u>of Pardons & Paroles</u>, No. 2:13cv51-CSC, 2014 WL 1017805, at *13-14 (M.D. Ala. Mar. 17, 2014); <u>Nzundu-Andi v. NCO Fin. Sys., Inc.</u>, No. 1:09-CV-2138-CAP-JFK, 2009 WL 10701239, at *3 n.2 (N.D. Ga. Dec. 14, 2009); <u>Thomas v. Ala. Council on Human Relations, Inc.</u>, 248 F. Supp. 2d 1105, 1115 (M.D. Ala. 2003). Therefore, the Court

must analyze Plaintiff's filings with the EEOC and determine whether Plaintiff filed a timely charge for each discrete employment action.

"A charge shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.9. In addition, a "charge should contain": (1) "The full name, address and telephone number of the person making the charge"; (2) "The full name and address of the person against whom the charge is made"; (3) "A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices"; (4) "If known, the approximate number of employees of the respondent employer"; and (5) "A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State . . . agency." 29 C.F.R. § 1601.12. The EEOC enjoys "broad discretion to determine in what form a charge must come and what information it must contain." Wilkerson, 270 F.3d at 1318. The burden of establishing a timely filed charge of discrimination falls on the plaintiff. Jordan v. City of Montgomery, 283 F. App'x 766, 767 (11th Cir. 2008) (per curiam) (citing Jackson v. Seaboard Coast Line R.R. Co., 678 F.2d 992, 1010 (11th Cir. 1982)).

Although the requirement that a plaintiff file a charge with the EEOC prior to filing a lawsuit is not jurisdictional, Fort Bend Cty. v. Davis, 139 S. Ct. 1843, 1850 (2019), "the filing of a charge of discrimination with the EEOC is a condition precedent

to the bringing of a civil action under Title VII." <u>Sanchez v.</u> <u>Standard Brands, Inc.</u>, 431 F.2d 455, 460 (5th Cir. 1970). Keeping the foregoing in mind, it is well-established in the Eleventh Circuit that courts are "extremely reluctant to allow procedural technicalities to bar claims brought under Title VII." <u>Gregory</u>, 355 F.3d at 1280.

### 1. <u>Demotion and Reduction in Pay Charge</u>

The Court begins by analyzing when Plaintiff's charge was filed. Plaintiff contends her letter to the EEOC on April 1, 2016, constitutes a timely filed charge and all amendments relate back to that date. (Resp. Opp'n Mot. for Summ. J., Doc. 27, at 13.) Plaintiff continues that to the extent the April 1, 2016 letter failed to constitute a timely-filed charge, her failure to execute the necessary changes within the requisite time was not due to her inaction, and therefore, the time to properly file the charge should be tolled from the submission of the letter. (Sur-Reply Opp'n Mot. for Summ. J., Doc. 33, at 4.) According to Plaintiff, her demotion occurred on October 1, 2015. Therefore, a timely filed charge for that claim must have been filed, at the latest, on April 1, 2016. In light of the Supreme Court and Eleventh Circuit's holdings that the absence of a timely charge is not jurisdictional and for the reasons set forth in Section III(C)(1), *infra*, the Court need not decide whether the April 1, 2016 letter satisfies the charge requirement.

13

## 2. Termination Charge

The Court must, however, address the timeliness of Plaintiff's EEOC charge encompassing her claims related to her termination. Defendant argues that Plaintiff filed her EEOC charge on February 7, 2017, the date Plaintiff executed her EEOC Form 5 to perfect the charge. (Br. Supp. Mot. for Summ. J., Doc. 22-4, at 13.) Under Defendant's theory, because February 7, 2017, is more than 180 days from the last possible date of Plaintiff's termination, Plaintiff's Title VII and ADA claims related to her termination are barred. The Court, however, disagrees. Although the Court refrains from deciding the validity of the April 1, 2016 letter, Plaintiff timely filed her charge as to the termination claims with later submissions.

The EEOC replied to Plaintiff's April 1, 2016 letter with a letter dated July 13, 2016, informing Plaintiff that the April 1, 2016 letter provided insufficient information and enclosed a questionnaire. Plaintiff completed the questionnaire, signed it, and dated it August 3, 2016. Although the April 1, 2016 letter only dealt with Plaintiff's alleged demotion, the questionnaire referred to her termination on July 19, 2016. The EEOC stamped the questionnaire received on October 17, 2016. Even assuming the charge was not filed until October 17, 2016, the filing on October 17, 2016, is within 180 days of all possible termination dates.

Accordingly, if the completed questionnaire constitutes a charge, the Title VII and ADA termination claims may proceed.

Pursuant to 29 C.F.R. § 1601.6(a), "Where the information discloses that a person is entitled to file a charge, the appropriate officer shall render assistance in the filing of a charge." The Eleventh Circuit previously held that an intake questionnaire does not necessarily constitute a charge. Pijnenburg v. West Ga. Health Sys, Inc., 255 F.3d 1304, 1306 (11th Cir. 2001). Under the Eleventh Circuit's "manifest-intent approach," however, an intake questionnaire may serve as a charge when "the circumstances of [the] case convince a reasonable person that [the plaintiff] manifested her intent to activate the machinery of Title VII" and the ADA "by lodging her intake questionnaire with the EEOC." Wilkerson, 270 F.3d at 1319-20; Godwin v. Mem'l Hosp. & Manor, No. 1:15-CV-140 (LJA), 2018 WL 1528204, at *8 (M.D. Ga. Mar. 28, 2018). Historically, courts analyze two specific factors in determining whether a plaintiff's submission to the EEOC constitutes a charge: (1) "The nature of the information provided in the document"; and (2) "Whether the EEOC treated the document in question as a 'charge' and acted accordingly." Daniels v. Mobile Register, Inc., No Civ.A. 04-0832-L, 2005 WL 1505856, at *6 (S.D. Ala. June 24, 2005) (citing Bost v. Fed. Express Corp., 372 F.3d 1233, 1240-41 (11th Cir. 2004); Wilkerson, 270 F.3d at 1319).

Evaluating the facts of this case, the Court finds that the questionnaire constitutes a charge, filed on October 17, 2016, at the latest. First, the questionnaire contains all of the required information of a charge in significant detail and is in writing. Although the questionnaire does not appear to indicate that it was verified, the lack of verification does not, itself, doom the submissions's status as a charge. A charge may be amended to cure the failure to verify, and the verification relates back to the timely filed charge. Butler v. Greif, Inc., 325 F. App'x 748, 749 (11th Cir. 2009) (citing Edelman v. Lynchburg Coll., 535 U.S. 106, 113 (2002); 29 C.F.R. § 1601.12(b)). Plaintiff subsequently verified the charge on February 7, 2017, which is deemed to relate back to the filing of the questionnaire.

Second, Plaintiff manifested her intent to activate the administrative process. First, the "Privacy Act Statement" at the bottom of the questionnaire reads: "Consistent with 29 C[.]F[.]R[.] [§] 1601.12(b) . . . , this questionnaire may serve as a charge if it meets the elements of a charge." (EEOC Questionnaire, at 148.) Second, Plaintiff checked "Box 2" of the intake questionnaire stating, "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer . . . that I accuse of discrimination information about the charge, including my name." (Id.) Box 2

16

contrasts Box 1 which states, "I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time." (Id.) A reasonable person could consider this information within the questionnaire, along with Plaintiff's supplied information, as Plaintiff manifesting her intent to activate the administrative process. See Fatz v. Winn-Dixie Stores, Inc., No. 6:12-cv-1668-Orl-36DAB, 2013 WL 4080330, at *8-9 (M.D. Fla. Aug. 13, 2013).

Additionally, in response to Plaintiff's April 1, 2016 letter, the EEOC letter informed Plaintiff that "[i]f [the EEOC] do[es] not hear from you within [thirty] days of the receipt of this letter, we will conclude that you do not want to file a charge of employment discrimination." (July 13, 2016 Letter, at 144.) Based upon the EEOC's language, a reasonable person could conclude the opposite, that responding with the questionnaire qualifies as an expression of intent to file a charge. See Wilkerson, 270 F.3d at 1320-22.

Third, the facts indicate the EEOC treated the intake questionnaire as a request for the EEOC to act, sent the EEOC Form 5 charge to Plaintiff to complete, and notified Defendant of the charge. Cf. Clark v. Coats & Clark, 865 F.2d 1237, 1239-41 (11th Cir. 1989) (finding intake questionnaire constituted a charge when

the plaintiff returned the intake questionnaire that the EEOC supplied within 152 days of termination, the EEOC sent a notice of charge of discrimination to the plaintiff's employer, and then the plaintiff signed a formal charge 202 days after his termination). As the Eleventh Circuit has instructed, courts are extremely reluctant to bar a plaintiff her day in court on the basis of a technical defect. Considering this hesitation and the foregoing information, the Court concludes Plaintiff's intake questionnaire filed on October 17, 2016, at the latest, met her obligation to file a timely charge with the EEOC regarding her termination claims.

## B. Abandoned Claims

In her response brief, Plaintiff expressed her intent to abandon her age discrimination and retaliation claims. (Resp. Opp'n Mot. for Summ. J., at 8 n.1.) Plaintiff further acknowledges she does not assert a hostile work environment claim. (Id.) Therefore, Plaintiff only proceeds with her disability discrimination, gender discrimination, intentional infliction of emotional distress, and attorney's fees claims. Defendant is entitled to summary judgment on the abandoned claims.

## C. Employment Actions

Plaintiff argues discrimination contributed to her alleged demotion and termination. "A plaintiff may establish a claim of illegal disparate treatment through either direct evidence or

18

circumstantial evidence." <u>Wilson v. B/E Aerospace, Inc.</u>, 376 F.3d 1079, 1085 (11th Cir. 2004). Plaintiff does not attempt to establish either her gender discrimination or disability discrimination claim using direct evidence. Disparate treatment claims relying on circumstantial evidence are generally evaluated under the framework set forth in <u>McDonnell Douglas Corp. v. Green</u>. 411 U.S. 793, 802-04 (1973). The <u>McDonnell Douglas</u> framework applies to both gender discrimination and disability discrimination disparate treatment claims. <u>Lewis v. City of Union City</u>, 918 F.3d 1213, 1220 (11th Cir. 2019) (en banc) (gender discrimination under Title VII); <u>Durley v. APAC, Inc.</u>, 236 F.3d 651, 657 (11th Cir. 2000) (disability discrimination under ADA).

Under the <u>McDonnell Douglas</u> framework, a plaintiff must first establish a prima facie case for the violation. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993). "The burden of proving a prima facie case is not onerous." <u>Watson v. Fort Worth Bank & Tr.</u>, 487 U.S. 977, 986 (1988) (citation and internal quotation marks omitted). Success in establishing a prima facie case creates a rebuttable presumption that the employer acted illegally. <u>McDonnell Douglas</u>, 411 U.S. at 802. "The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." <u>Id.</u> The employer's burden is an "exceedingly light" one of "production, not persuasion," which means the employer "need only produce evidence

that could allow a rational fact finder to conclude that [the employment action] was not made for a discriminatory reason." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1331 (11th Cir. 1998); Meeks v. Comput. Assocs. Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994). If the employer meets this burden, the burden shifts back to the plaintiff who can only avoid summary judgment by presenting "significantly probative" evidence that the proffered reasons are pretextual. Young v. Gen. Foods Corp., 840 F.2d 825, 829 (11th Cir. 1988) (citation omitted).

1. Demotion – Gender and Disability Discrimination

Plaintiff alleges that her relocation from the new car service department to the used car service department was a discriminatory demotion based upon her gender and disability.

a. *McDonnell Douglas Analysis*

Under Title VII, "It shall be an unlawful employment practice for an employer — (1) . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a). Additionally, the ADA disallows "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. 12112(a). Plaintiff acknowledges that her

20

claims are for disparate treatment. Accordingly, the <u>McDonnell Douglas</u> framework applies.

In her response opposing summary judgment, Plaintiff included the elements to make out a prima facie case of gender and disability discrimination.[3] (Resp. Opp'n Mot. for Summ. J., at 14, 17.) The requirement that the employer treated "similarly situated employees outside of [her] protected class more favorably" is recognized as an element of each prima facie case for disparate treatment. (<u>Id.</u>) Comparator evidence is the most common mechanism for satisfying the "similarly situated" requirement. <u>See</u> <u>Lewis</u>, 918 F.3d at 1217 (citing <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 258-59 (1981)) ("similarly situated" means a "comparator"). Yet, Plaintiff appears to accept that she cannot point to a proper comparator regarding her alleged demotion. Rather than putting forth evidence of a comparator that was similarly situated and not demoted, Plaintiff argues that she need not produce comparator evidence to survive summary judgment and may instead show a "convincing mosaic of circumstantial evidence."

    b.  *"Mixed-Motive" and "Convincing Mosaic" Analysis*

---

[3] Plaintiff makes no attempt to argue that her ADA claim is based upon a failure to accommodate. Accordingly, the Court only evaluates Plaintiff's disability discrimination claims under the disparate treatment theory that she was demoted and terminated because of her disability.

Because Plaintiff departs from the traditional comparator analysis, the Court analyzes whether the record evidences a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011) (finding a plaintiff can survive summary judgment upon presenting "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent"). The "mixed-motive" framework requires a plaintiff to show: "(1) The defendant took an adverse employment action against the plaintiff; and (2) A protected characteristic was a motivating factor for the defendant's adverse employment action." Quigg v. Thomas Cty. Sch. Dist., 814 F.3d 1227, 1232-33 (11th Cir. 2016) (punctuation omitted). A convincing mosaic of circumstantial evidence is sufficient to survive summary judgment on the motivating factor element. See McCarley v. City of Northport, 240 F. Supp. 3d 1242, 1248-49 (N.D. Ala. 2017).

The convincing mosaic theory is not intended to undermine the usual requirement of an identified comparator. Turner v. Fla. Prepaid Coll. Bd., 522 F. App'x 829, 833 (11th Cir. 2013) (per curiam). The evidence presented under the "convincing mosaic" must be sufficient enough "to overcome the lack of comparator evidence." Williams v. Cleaver-Brooks, Inc., No. 7:11-CV-144 (HL), 2012 WL 6151141, at *8 (M.D. Ga. Dec. 11, 2012); accord Bell

v. Crowne Mgmt., LLC, 844 F. Supp. 2d 1222, 1234 (S.D. Ala. 2012) ("When a plaintiff cannot draw into question the most obvious nondiscriminatory reason for unequal treatment . . . , any substitute evidence must be comparably powerful in order to preserve to the prima facie case its gate-keeping function as ordained by the Supreme Court."). "When an employee raising a mixed-motive claim solely on remarks that indirectly evidence discrimination, the employee must show that circumstances surrounding the remarks create a genuine issue of material fact that the employer actually relied on her sex or gender in making its decision." Quigg, 814 F.3d at 1241 (internal quotation marks omitted).

To support her position, Plaintiff directs the Court to a comment Mr. Wideman, her immediate supervisor, made before Plaintiff's relocation: that he wanted to "hug the girls" before Plaintiff underwent her double mastectomy as part of her breast cancer treatment.[4] In passing, Plaintiff also refers to numerous alleged derogatory comments that Mr. Wideman made to Plaintiff regarding her gender.[5] (Resp. Opp'n Mot. for Summ. J., at 17.)

---

[4] The social media posts at issue are irrelevant to Plaintiff's alleged demotion. The evidence is that Defendant moved Plaintiff from the new car service department to the used car service department effective the first week of October, 2015. The evidence shows that Defendant became aware of Plaintiff's online post on July 11, 2016, and therefore, the social media post could not have been a factor in Plaintiff's move to the used car service department.

[5] Reviewing the record, statements that Mr. Wideman allegedly made referencing gender include a statement made to a third person that Plaintiff was a "bitch" (Woodward Dep., at 71:15-72:7), a comment that "if [Plaintiff] kept cooking like that he could get her pregnant" (id. at 74:4-8), stating that Plaintiff

In response, Defendant initially argued that Plaintiff does not identify a decision maker. (Reply Br. Supp. Mot. for Summ. J., Doc. 31, at 13.) Later, Plaintiff admitted, however, that Mr. Wideman was not the decision maker and affirmatively states that Mr. Gibbs made the transfer decision. (Pl.'s St. of Disputed Mat. Facts, ¶ 11.) Plaintiff points to no evidence establishing that Mr. Gibbs's decision was motivated by discriminatory animus. Accordingly, Mr. Gibbs is a neutral decisionmaker.

Considering Mr. Gibbs is a neutral decisionmaker, Plaintiff may only survive summary judgment under a cat's paw theory. "Under this theory, a non-decisionmaking employee's discriminatory animus may be imputed to a neutral decisionmaker when the decisionmaker has not independently investigated allegations of misconduct." Dwyer v. Ethan Allen Retail, Inc., 325 F. App'x 755, 757 (11th Cir. 2009) (per curiam) (citing Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1249 (11th Cir. 1998)). "In such a case, the recommender is using the decisionmaker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus."

---

"could not be coming around [the place of employment] dressed in jeans" (id. at 74:13-17), and a remark that he did not want to hire any more women because they "were full of drama" (id. at 241:11-21). Plaintiff offers no evidence regarding when these statements occurred in relation to the alleged adverse employment action. See Quigg, 814 F.3d at 1242 (considering temporal proximity of communications evidencing bias to the employment action); see also Williams, 2012 WL 6151141, at *8 (removing circumstantial evidence from convincing mosaic analysis that occurred "at least three years before" the adverse employment action). Plaintiff bears the burden of producing a convincing mosaic of circumstantial evidence.

*Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999) (per curiam) (citation omitted).

Here, Plaintiff attributes discriminatory animus to Mr. Wideman, not Mr. Gibbs, but Plaintiff "has not introduced any evidence that could reasonably indicate that [Mr. Wideman's] alleged discriminatory animus influenced [Mr. Gibbs's] decision to [relocate] her." Id. In *Dwyer*, the employee argued that her supervisor discriminated against her when her supervisor, who allegedly harbored animus regarding her disability, recommended to his supervisor that the employee should be terminated. Despite the recommendation, the Eleventh Circuit still affirmed summary judgment to the employer. 325 F. App'x at 757-58. In comparison, Plaintiff offers no evidence that Mr. Wideman made a similar recommendation to Mr. Gibbs. Because Plaintiff is relying on a convincing mosaic theory, her failure to offer evidence regarding Mr. Gibbs's discriminatory intent or Mr. Wideman's recommendation for her transfer falls well short of her burden.[6] Cf. *Quigg*, 814 F.3d at 1242; *Smith*, 644 F.3d at 1329-35. Therefore, Defendant is entitled to summary judgment on Plaintiff's claims related to her demotion and reduction in pay.

---

[6] Because the Court concludes that Plaintiff fails to offer sufficient evidence under her alternative theories to establish a prima facie case, the Court need not address Defendant's argument that a mixed motive theory is inapplicable to a disability discrimination claim regarding Plaintiff's alleged demotion. (Reply Br. Supp. Mot. for Summ. J., at 21-22.)

## 2. Termination

The Court next evaluates Plaintiff's claims that Defendant terminated her because of her gender and disability. In doing so, the Court turns to the familiar McDonnell Douglas framework. Because the prima facie requirements for gender discrimination and disability discrimination differ, the Court analyzes the prima facie case for each separately.

### a. *Prima Face Case - Gender Discrimination*

To establish a prima facie case of disparate treatment gender discrimination through circumstantial evidence, a plaintiff must first show that "(1) she belongs to a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees outside her classification more favorably; and (4) she was qualified to do the job." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004). Defendant concedes three of the four elements acknowledging: (1) Plaintiff is a member of a protected class; (2) Plaintiff was qualified to perform her former job as Assistant Service Manager; and (3) Plaintiff's termination constitutes an adverse employment action. Defendant disputes, however, that Plaintiff can establish the remaining "similarly situated" element arguing that Plaintiff points to no employees outside her classification treated more favorably.

The Eleventh Circuit recently clarified that "similarly situated" means that the plaintiff "and her comparators are similarly situated in all material respects." <u>Lewis</u>, 918 F.3d at 1224 (internal punctuation omitted). Similarly situated in all material respects means that the comparator "will have 'engaged in the same basic conduct (or misconduct) as the plaintiff[;] will have been subject to the same employment policy, guideline, or rule as the plaintiff[;] will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff[;] and will share the plaintiff's employment or disciplinary history." <u>McQueen v. Ala. Dep't of Transp.</u>, 769 F. App'x 816, 821-22 (11th Cir. 2019) (per curiam) (quoting <u>Lewis</u>, 918 F.3d at 1238-39). <u>Lewis</u>, in no uncertain terms, stated that the comparator evidence is proper analyzed at the prima facie stage. <u>Lewis</u>, 918 F.3d at 1224.

First, the Court highlights that Plaintiff argues one of Defendant's reasons for her termination was Defendant's discovery of an online post by Plaintiff. Defendant claims the post was not a reason for terminating Plaintiff but the reason Defendant did not rehire Plaintiff. Although the Court saves the pretext analysis, the timing of Defendant's decision to terminate Plaintiff is essential to Plaintiff establishing a prima facie case through comparator evidence. If the evidence conclusively establishes Defendant decided to terminate Plaintiff prior to it

27

discovering Plaintiff's online post, the post would be removed as a cause for her termination as a matter of law thereby eliminating the referenced social media posts from consideration as underlying conduct for the comparator analysis. See Lewis, 918 F.3d at 1227 ("[A] similarly situated comparator . . . will have engaged in the same basic conduct (or misconduct) as the plaintiff . . . ."). The Parties hint at a dispute regarding the timing without specifically addressing the issue. Nevertheless, the Court examines the issue to determine if an issue of fact exists.

Defendant contends that Angela Hooks sent Plaintiff a letter on May 25, 2016, informing Plaintiff that she was no longer an active employee. Plaintiff admits receiving the letter (Pl.'s Resps. to Def.'s First Request for Admissions, Doc. 22-3, ¶ 11) but claims Defendant never informed her of her termination before she returned to work on July 18, 2016. At that time, Defendant expressed uncertainty regarding her position and asked her to return the following day. Defendant's Director of Human Resources states that on July 19, 2016, she informed Plaintiff of her termination. (Hooks Aff., ¶ 26.) On that same day, Defendant presented Plaintiff a severance agreement. The Severance Agreement states, "Employee desires to accept the severance and resigns her employment effective the date she executes this agreement." (Severance Agreement, at 133.) On or near July 11, 2016, Defendant was made aware of the online post at issue.

Nothing in the foregoing evidence conclusively establishes Defendant decided to terminated Plaintiff prior to discovering the online post.

Plaintiff presents evidence that three male employees of Defendant, with no cancer or other similar diagnosis, made social media posts sufficiently similar in nature to Plaintiff's to render them comparators.[7] At the outset, Mr. Licklider is an improper comparator as a matter of law. Defendant puts forth evidence that Mr. Licklider was no longer an employee of Defendant when Defendant became aware of his post in question. Plaintiff offers no competing evidence on this issue. Therefore, under the <u>Lewis</u> test, even accepting Plaintiff and Mr. Licklider engaged in similar conduct, the remaining considerations used to establish their similar situation are lacking.

Next, Defendant argues that Mr. Cook is not similarly situated because, despite his active employment status with Defendant when the post was discovered, Mr. Cook removed the post after Defendant

---

[7] Defendant objects to the comparator social media posts in its response to Plaintiff's Statement of Disputed Material Facts as hearsay and because the posts are not properly authenticated. (Def.'s Resp. to Pl.'s St. of Mat. Facts, Doc. 40, ¶¶ 43, 44, 46, 47, 52.) First, Defendant arguably waived its objections to the Court's consideration of the social media posts at this stage by failing to raise the objections in its reply brief and sur-reply brief. <u>Cf.</u> <u>Thomas v. Clayton Cty.</u>, 94 F. Supp. 2d 1330, 1332 (N.D. Ga. 2000) (finding objection properly made when raised in reply brief). Nevertheless, "a court may . . . consider evidence that is admissible or that could be presented in an admissible form" at trial. <u>Denney v. City of Albany</u>, 247 F.3d 1172, 1189 n.10 (11th Cir. 2001). The Court concludes that the social media posts could be presented in admissible form. To the extent Defendant objects to the consideration of the comparator social media posts at this stage, Defendant's objection is overruled.

received notice of it. (Reply Supp. Mot. for Summ. J., at 17.) The fact that Mr. Cook removed the post after Defendant's awareness of it does not materially change the facts that Defendant was made aware the post existed while it employed Mr. Cook and the posts are similar in nature. As noted, if Plaintiff was in fact terminated prior to Defendant discovering the online post, the Court agrees that Plaintiff and Mr. Cook would not be similarly situated. But, having found an issue of fact regarding Plaintiff's employment status at the time Defendant was made aware of Plaintiff's post, and considering Defendant's failure to offer other distinguishing evidence, Plaintiff and Mr. Cook are sufficiently similar to constitute comparators.

Finally, Plaintiff asserts Mr. Spooner's social media post is the same underlying conduct, but Defendant did not terminate him. Defendant attempts to distinguish Mr. Spooner's post with evidence that Mr. Spooner's Facebook account was private at the time Defendant received information regarding the post. (Hooks Aff., ¶ 29.) Plaintiff puts forth evidence that she accessed Mr. Spooner's post without a "friend" connection, implying the post was public. (Woodward Dep., at 363:17-364:4.) Given that Defendant employed Mr. Spooner at the time the post existed on his Facebook account and conflicting evidence exists regarding whether his account was public or private at all relevant times, Mr. Spooner and Plaintiff are proper comparators.

Defendant further argues that the male employees are different because the corporate office did not discover the male employees' posts. Even so, this is not a significant enough reason to distinguish the conduct. The relevant question is whether Defendant, aware of similar conduct, treated employees differently. There is no dispute that Defendant was notified of all three social media posts. Plaintiff meets her prima face burden to put forth evidence of proper comparators.

### b. *Prima Facie Case – Disability Discrimination*

The Parties agree that a prima facie case for ADA discrimination requires a plaintiff to show that, "at the time of the adverse employment action" she: "(1) [was] disabled; (2) [was] a qualified individual; and (3) was subjected to unlawful discrimination because of [her] disability." U.S. Equal Emp't Opportunity Comm'n v. St. Joseph's Hosp., Inc., 842 F.3d 1333, 1343 (11th Cir. 2016); Greenberg v. BellSouth Telecomm., Inc., 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam). When relying on circumstantial evidence in the disparate treatment context, the third element generally requires that a comparator "engaged in similar misconduct but [was] not similarly disciplined." Wolfe v. Postmaster Gen., 488 F. App'x 465, 468 (11th Cir. 2012) (per curiam). Defendant expressly concedes only that Plaintiff had a disability. (Br. Supp. Mot. for Summ. J., at 29.) Further, Defendant does not appear to dispute that Plaintiff suffered an

adverse employment action, termination. See Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008). Defendant argues, however, that Plaintiff fails to satisfy the "qualified individual" element as to termination because she was on leave.

Under the ADA, a "qualified individual" is a person who "with or without reasonable accommodation, can perform the essential functions of [her] employment." 42 U.S.C. § 12111(8). Defendant argues that Plaintiff was not a "qualified individual" because she required long-term medical leave; thus, she could not perform the essential functions of her employment. It is well-established that an employer is not required to provide indefinite leaves of absence to an employee with a disability. Wood v. Green, 323 F.3d 1309, 1313-14 (11th Cir. 2003). Defendant also offers uncontradicted evidence that Plaintiff exceeded the permissible leave, but Defendant, in brief, does not claim that it terminated Plaintiff for taking leave beyond the permissible limit.

The record contains evidence that Defendant terminated Plaintiff after she was cleared to return to work following her cancer treatment. Having overcome the disability, and based on Defendant's acknowledgement that Plaintiff was qualified to perform her job prior to leave, there is, at minimum, a question of fact regarding Plaintiff's ability to resume as an Assistant Service Manager following leave.

Finally, for the reasons set forth in Section III(C)(2)(a), *supra*, Plaintiff meets her burden of establishing a prima facie case for disability discrimination. There is a question of fact surrounding the timing of Defendant's decision to terminate Plaintiff and the reason for her termination. Because Plaintiff points to comparators who engaged in similar conduct, did not have a disability, and were not terminated for their social media posts, Plaintiff satisfies her prima facie burden. Because the remaining arguments under the McDonnell Douglas framework equally apply to Plaintiff's gender discrimination and disability discrimination claims, the Court analyzes them together.

### c. *Legitimate, Nondiscriminatory Reasons*

Defendant offers a legitimate, nondiscriminatory reason for terminating Plaintiff and an additional reason for not rehiring Plaintiff. First, the undisputed evidence is that after Plaintiff took leave, Defendant demolished the center which housed Plaintiff's prior position. Second, Defendant claims it refused to rehire Plaintiff after receiving notification of the online post.[8] "To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not

---

[8] Despite Defendant's contention that it did not terminate Plaintiff because of the online post, because the timing of Defendant's decision to terminate Plaintiff is factually disputed, the Court must examine whether an issue of fact exists regarding the online post's contribution to Plaintiff's termination.

been motivated by discriminatory animus." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (emphasis omitted) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257 (1981)).

First, a business decision to eliminate a position may serve as a legitimate, nondiscriminatory reason for termination. *See Gardner v. Aviagen*, 454 F. App'x 724, 728 (11th Cir. 2011) (per curiam); *see also Mitchell v. City of LaFayette*, 504 F. App'x 867, 870 (11th Cir. 2013) (per curiam) (citing *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1426 (11th Cir. 1998)). Second, an employee's social media content may serve as a legitimate, nondiscriminatory reason for taking adverse employment action. *See Carney v. City of Dothan*, 158 F. Supp. 3d 1263, 1282 (M.D. Ala. 2016). Defendant's proffered reasons satisfy its burden.

### d. *Pretext*

To survive summary judgment, Plaintiff must show that Defendant's proffered reasons were pretextual. Meeting the burden requires "sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action" by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Cooper v. S. Co.*, 390 F.3d

695, 725 (11th Cir. 2004) (citation omitted), *overruled, in part,*
*on other grounds*, Ash v. Tyson Foods, Inc., 546 U.S. 454 (2006);
Combs, 106 F.3d at 1529. "A plaintiff is not allowed to recast an
employer's proffered nondiscriminatory reasons or substitute her
business judgment for that of the employer." Alvarez v. Royal
Atl. Developers, Inc., 610 F.3d 1253, 1265 (11th Cir. 2010)
(quoting Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir.
2000) (en banc)). If the employer satisfies the intermediate
burden, "an employee must meet that reason head on and rebut it,
and she cannot succeed by simply quarreling with the wisdom of
that reason." Id. at 1265-66 (quoting Chapman, 229 F.3d at 1030).
An employer's multiple reasons for an employment action do not
necessarily demand a finding that the explanations are shifting or
inconsistent. Tidwell, 135 F.3d at 1428. When an employer offers
multiple reasons for termination, "those reasons must be
inconsistent in order to constitute evidence of pretext," Moore v.
Jefferson Cty. Dep't of Human Res., 277 F. App'x 857, 859 (11th
Cir. 2008) (citing Zaben v. Air Prods. & Chems., Inc., 129 F.3d
1453, 1458-59 (11th Cir. 1997)), or the plaintiff must put forth
"record evidence . . . permit[ting] a reasonable factfinder to
reject each . . . proffered explanation[] for [the] decision."
Combs, 106 F.3d at 1539.

The Court finds that Defendant's explanations are
inconsistent and Defendant contradicts itself to the point that a

reasonable factfinder could conclude Defendant's proffered reasons for termination are unworthy of credence. First, Defendant claims that the only reason for terminating Plaintiff was the elimination of her position. Defendant claims it then refused to rehire her based upon the social media post. The discrepancies begin here. In Ms. Hooks's Affidavit, she states that Ms. Woodward approached Mr. Spooner about her job on July 18, 2016. But, "[u]nbeknownst to [Mr.] Spooner, . . . the dealership's General Manager, William Gibbs, had received an e-mail . . . advising of an inflammatory online comment made by [Plaintiff]." (Hooks Aff., ¶ 25.) Ms. Hooks continues, "Based on the elimination of Ms. Woodward's position and her online post, . . . I advised Ms. Woodward on July 19, 2016 that her job had been eliminated and, thus, her employment was terminated and that she was not eligible to be re-hired for any position at the dealership due to her online post." (Id. ¶ 26.)

A factfinder could interpret Ms. Hooks's statement to corroborate Plaintiff's argument and contradict Defendant's. First, she affirms under oath that Plaintiff was informed that she was terminated on July 19, 2016, the day of her meeting after returning from leave. Second, Ms. Hooks states that when, on July 18, 2016, Mr. Spooner asked Plaintiff to return the following week, Mr. Spooner lacked knowledge of the social media post. Ms. Hooks, on the other hand, upon learning of the conversation between Mr.

Spooner and Plaintiff, asked Plaintiff to return the next day, July 19, 2016. Upon Plaintiff's return, Ms. Hooks, possessing knowledge of the social media post, terminated Plaintiff's position and explained Plaintiff was ineligible for rehire at the same time, but for different reasons.

Further, the EEOC's Right to Sue letter reveals a contradiction in Defendant's statements: "In regards to your termination, Respondent stated that their main reason was because of your facebook comment. Respondent alleged that that facebook comment from you was racially controversial and inappropriate as a management employee of Jim Hudson Lexus."[9] (EEOC Right to Sue Letter, Doc. 22-2, at 157.)

These inconsistencies are sufficient for a jury to find Defendant's claimed reason for terminating Plaintiff, the elimination of her position, false. Based on the foregoing, sufficient evidence exists that a jury could disbelieve Defendant's argument that it terminated Plaintiff because it eliminated Plaintiff's position and instead find Defendant

---

[9] Plaintiff does not cite to this statement, and Defendant makes no objection to the admissibility of this statement. But, "[t]o the extent the EEOC right-to-sue letter . . . may be characterized as hearsay, this evidence may be considered at summary judgment if it can be reduced to admissible form at trial." Boykin v. Gulf Coast Enters., No. 2:15-cv-631-MHT-GMB, 2016 WL 1357459, at *4 n.5 (M.D. Ala. Mar. 17, 2016) (citing Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999)). As was the case in Boykin, "the [C]ourt finds that, assuming this evidence constitutes hearsay, it could be admissible at trial through the presentation of live testimony or through an exception to the hearsay rule, and therefore it may be considered at the summary-judgment stage." Id.; see also supra Note 7.

terminated Plaintiff because of the social media post. The elimination of Defendant's proffered reason allows a factfinder to conclude that, because of Defendant's treatment of other employees' social media posts, Defendant's termination was discriminatory. See Standard, 161 F.3d at 1332. The combination of issues of fact regarding the validity of Defendant's legitimate, nondiscriminatory reason for termination and Defendant's disparate treatment of comparators allows Plaintiff to survive summary judgment on her claims of gender and disability discrimination as to her termination.[10]

## D. Intentional Infliction of Emotional Distress

Plaintiff argues that her alleged demotion after her diagnosis and her termination following her return to work evidence intentional infliction of emotional distress. The Court concludes Defendant is entitled to summary judgment on this claim.

Under Georgia law, the elements of a cause of action for intentional infliction of emotional distress include: "(1) intentional or reckless conduct; (2) that is extreme and outrageous; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress. Ferrell v. Mikula, 672 S.E.2d 7, 13 (Ga. Ct. App. 2008).

---

[10] Based upon the Court's finding that Plaintiff survives summary judgment on her disability discrimination claim through comparator evidence, the Court need not address whether a "mixed motive" theory of discrimination is proper to prove a disability discrimination claim under the ADA. See *supra* Note 6.

"Liability for [intentional infliction of emotional distress] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Yarbrough v. SAS Sys., Inc., 419 S.E.2d 507, 509 (Ga. Ct. App. 1992). "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." Frank v. Fleet Fin., Inc. of Ga., 518 S.E.2d 717, 720 (Ga. Ct. App. 1999) (citation omitted).

The Eleventh Circuit's decision in Roddy v. City of Villa Rica squarely addresses the issue at hand. 536 F. App'x 995 (11th Cir. 2013) (applying Georgia law). In Roddy, the plaintiff suffered a back injury and was terminated after he exhausted all leave. Id. at 997. In affirming summary judgment for the defendant, the Eleventh Circuit noted, "Georgia courts have held that an employer's termination of an employee — however stressful to the employee — generally is not extreme and outrageous conduct." Id. at 1003 (quoting Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1229 (11th Cir. 1993) (citing ITT Rayonier v. McLaney, 420 S.E.2d 610, 612 (Ga. Ct. App. 1992))). Absent abuse or disrespect, an employment action is not extreme or outrageous conduct as a matter of law. Id.

Although Plaintiff's cancer diagnosis and subsequent double mastectomy were undoubtedly more significant in comparison to the back injury at issue in Roddy, Plaintiff offers no authority suggesting that the underlying disability amplifies the outrageousness of the employment decision. Defendant's employment decision may be viewed as harsh or unkind, but Plaintiff presents no evidence that Defendant's conduct reached sufficient levels to succeed on her intentional infliction of emotional distress claim.

Furthermore, Plaintiff points to no evidence establishing that the employment actions in question caused severe emotional distress. "Although, 'the frustration associated with losing one's job'" or being demoted "'is understandable,' that frustration alone is not 'severe.'" Id. (quoting Jones v. Fayette Family Dental Care, Inc., 718 S.E.2d 88, 91 (Ga. Ct. App. 2011)). Accordingly, Plaintiff's claim for intentional infliction of emotional distress fails.

## IV. CONCLUSION

Based on the foregoing, Defendant's motion for summary judgment (Doc. 22) is **GRANTED IN PART** and **DENIED IN PART**. Defendant's motion is granted as to Plaintiff's claims for age discrimination, retaliation, hostile work environment, intentional infliction of emotional distress, disability discrimination related to her alleged demotion, and gender discrimination related

to her alleged demotion, to the extent she asserts each. Plaintiff's remaining claims under the ADA and Title VII shall proceed to trial in due course.

**ORDER ENTERED** at Augusta, Georgia, this 30th day of September, 2019.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA